## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

IRA M. WEINSTEIN;                          :
HILDEGARD A. WEINSTEIN;          :
GREEN START PROPERTIES,          :
LLC; RED START PROPERTIES,      :
LLC; and GRAY STAR                        :    CIVIL ACTION NO.
PROPERTIES, LLC,                            :    2:13-CV-00261-RWS
                                                          :
          Plaintiffs,                               :
                                                          :
          v.                                            :
                                                          :
JOHN J. MITCHELL; CUMMING    :
HOME RENTALS, LLC;                     :
LANIER-FORSYTH HOME             :
RENTALS, LLC; JJM HOME            :
RENTALS, LLC; J&E RENTAL         :
HOMES, LLC; JEFFREY B.             :
MOORE; CUMMING HOME              :
PROPERTY MANAGEMENT,            :
LLC; ESTATE OF EDWARD             :
JOSEPH MITCHELL; and DEE        :
KING,                                                :
                                                          :
          Defendants.                            :

## <u>ORDER</u>

This case comes before the Court on Plaintiffs' Motion to Strike Affidavits

of Defendants Jeffrey Moore and John J. Mitchell [Doc. No. 171], Defendants'

Motions to Exclude the Testimony of Expert Witnesses [Doc. Nos. 112-121],

AO 72A
(Rev.8/82)

Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 158], and Defendants' Motions for Summary Judgment [Doc. Nos. 122-126, 130]. After reviewing the record, the Court enters the following Order.

## BACKGROUND

This case arises out of the sale of twenty-three residential properties to Plaintiffs [Pls.' Statement of Material Facts ("Pls.' SOMF"), Doc. No. 158-54, ¶ 7]. The properties were sold by Defendants John Mitchell, Cumming Home Rentals, JJM Home Rentals, Lanier-Forsyth Home Rentals, and J&E Rental Homes ("Seller Defendants") [Id., ¶ 8]. At the time of sale, Seller Defendants completed and signed disclosure statements for each home [Id., ¶ 10]. The disclosure statements were incorporated into the parties' purchase agreements [Id.]. The disclosure statements required Seller Defendants to answer a series of yes or no questions "to the best of Seller's knowledge and belief" [Defs.' Resp. to Pls.' SOMF, Doc. No. 192 at 19]. In the disclosure statements, Defendants indicated that no work that had been done on the properties violated permits, building codes, or zoning regulations [Pls.' SOMF, Doc. No. 158-54, ¶ 11–12]. But Plaintiffs allege that many features of the homes, e.g. the number of bedrooms, bathrooms, stories, or square feet, exceed that for which the homes

2

were permitted [Id., ¶ 14].  On this basis, Plaintiffs raise claims against Defendants for fraud, negligent misrepresentation, breach of contract, unjust enrichment, and civil conspiracy [Complaint, Doc. No. 1].  Plaintiffs substantiate their claims in part with the testimony of five expert witnesses who specialize in realty, home inspection, home appraisal, building code compliance, and septic systems. Defendants move to exclude the testimonies of these expert witnesses, asserting that they are unreliable, irrelevant, and inadmissible [Doc. Nos. 112-121].

Plaintiffs move for partial summary judgment on their breach of contract claims pertaining to twelve of the twenty-three properties [Doc. No. 158]. Additionally, Plaintiffs move to strike portions of the affidavits of Defendants Jeffrey Moore and John J. Mitchell [Doc. No. 171].  Defendants assert that they had no knowledge of any violations at the time Seller Defendants signed the disclosure statements.  On these grounds, the six remaining Defendants move for summary judgment on all of Plaintiffs' claims [Doc. Nos. 122-126, 130].

## DISCUSSION

I.    **Plaintiffs' Motion to Strike Affidavits of Defendants Jeffrey Moore and John J. Mitchell [Doc. No. 171]**

Plaintiffs move to strike five paragraphs from the affidavits of Defendants

Moore and Mitchell, alleging that three paragraphs violate the sham affidavit rule and that two paragraphs violate the personal knowledge requirement.

### A.    Sham Affidavit Rule

Plaintiffs move to strike paragraph 22 of Moore's affidavit and paragraphs 11 and 45 from Mitchell's affidavit, alleging that the statements therein contradict prior testimony of these Defendants and should be disregarded as a sham [Pls.' Mot. to Strike Aff. ("Pls.' MTSA"), Doc. No. 171 at 6].

### 1.    Legal Standard

"An affidavit may only be disregarded as a sham when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact and that party attempts thereafter to create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986) (citations omitted).  "The court making this determination must be careful to distinguish 'between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.'" Rodriguez v. Jones Boat Yard, Inc., 435 F. App'x 885, 887 (11th Cir. 2011) (citing Tippens at 953).

4

2.      **Analysis**

First, Plaintiffs allege that Moore gave sham affidavit testimony when he stated: "I was not aware of any . . . permit inaccuracies on any of the 23 homes at the time of the sales transactions" [Pls.' MTSA, Doc. No. 171 at 3-4]. Plaintiff argues that this statement contradicts Moore's previous deposition testimony, which states that prior to closing, Moore pulled some permit records for homes sold to Plaintiffs, relayed his findings to Mitchell who "was stunned to find out all five in Shady Shores were permitted as one-bedroom homes," and that the two then discussed a price reduction [Id.]. In his deposition testimony, Moore did not state that he thought the permits were inaccurate, or that permit inaccuracies were the reason for Mitchell's surprise and discussion of a price reduction. While Moore's new affidavit may raise a credibility issue, it does not rise to the level of transparent sham because it is not inherently contradictory, and the fact finder should be allowed to consider any potential discrepancies in his testimony.

Plaintiffs also allege that Mitchell gave sham testimony in two paragraphs of his affidavit: (1) when Mitchell stated that he did not have "any knowledge of any condition of any of these homes that was contrary to any permit issued on the 23 homes purchased by the Plaintiffs" [Pls.' MTSA, Doc. No. 171 at 4], and (2)

5

when Mitchell stated that at the time of signing the disclosure statements for the homes, "the information was provided based upon my knowledge and my review of available documents and was all accurate to my knowledge" [Pls.' MTSA, Doc. No. 171 at 5].   Plaintiffs argue that these statements contradict Mitchell's deposition testimony, in which he stated that he was surprised by Moore's report and that the two then discussed a price reduction [Id.].   In his deposition testimony, Mitchell did not state that he thought the condition of the homes was contrary to the permits, or that such caused his surprise and the discussion of a price reduction.   While Mitchell's new affidavit may raise a credibility issue, it does not rise to the level of transparent sham because it is not inherently contradictory, and the fact finder should be allowed to consider any potential discrepancies in his testimony.

## B.    Personal Knowledge Requirement

Plaintiff moves to strike paragraphs 25 and 27 of Moore's affidavit, alleging that Moore did not have personal knowledge of the statements therein [Pls.' MTSA, Doc. No. 171 at 9].

### 1.    Legal Standard

"An affidavit or declaration used to support or oppose a motion must be

AO 72A
(Rev.8/82)

made on *personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added).  The "personal knowledge requirement prevents statements in affidavits that are based, in part, upon information and belief – instead of only knowledge – from raising genuine issues of fact sufficient to defeat summary judgment."  Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002).

### 2.    Analysis

Plaintiffs allege that Moore overstepped the personal knowledge requirement when he admitted that he "neither filled out the permit information nor signed the permit application" for the home at 8925 Capri Street, but then went on to state that a staff member of another builder must have filled out the permit application and must have made a clerical error [Pls.' MTSA, Doc. No. 171 at 9].   Defendants respond, arguing that Moore was merely explaining his understanding of the situation [Defs.' Br., Doc. No. 200 at 5 n.2].   But by speculating about what "must have" happened, Moore relied, in part, upon the information available to him and his beliefs, and in doing, violated the personal knowledge requirement.

7

### C.     Conclusion

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Plaintiffs' Motion to Strike the affidavits of Moore and Mitchell [Doc. No. 171]. The motion [Doc. No. 171] is **DENIED** as to paragraph 22 of Moore's affidavit and paragraphs 11 and 45 of Mitchell's affidavit.  These statements do not rise to the level of transparent sham because they do not inherently contradict the statements made by Moore and Mitchell in deposition.  The motion [Doc. No. 171] is **GRANTED** as to paragraphs 25 and 27 of Moore's affidavit.  These statements are inadmissible because they are based, in part, upon information and belief rather than personal knowledge, in violation of Rule 56(c)(4).  Paragraphs 25 and 27 of Moore's affidavit are hereby stricken and will not be considered by the Court.

## II.    Defendants' Motions to Exclude Expert Testimony [Doc. Nos. 112-121]

Defendants move to exclude or limit the testimonies of five of Plaintiffs' expert witnesses.[1]  The Court sets out the legal standard for the admissibility of expert testimony before addressing the motions on the merits.

_____

[1] Defendants have filed duplicate copies of each motion.

8

### A.    Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. This rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The proponent of expert testimony bears the burden to show that his expert is qualified to testify competently regarding the matters she intends to address, the methodology by which the expert reached her conclusions is sufficiently reliable, and the testimony assists the trier of fact.  U.S. v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002)); Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1113-1114 (11th Cir. 2005) (explaining that it is the proponent's burden to lay the foundation for admission of expert testimony).

9

The United States Supreme Court explained the purpose of Rule 702 in Daubert. "Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993). But a jury may have difficulty evaluating an expert's opinion. See Id. Accordingly, trial courts must act as gatekeepers to ensure that an expert witness' testimony is not only relevant, but reliable. Id. "The proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence it is reliable." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted). Thus, the inquiry into reliability must focus on "principles and methodology" and not the expert witness' conclusions. Daubert, 509 U.S. at 595.

However, "[a] district court's gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)); accord Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

10

evidence."); Adams v. Laboratory Corp. of Am., 760 F.3d 1322, 1334 (11th Cir. 2014) (holding that a risk of bias in an expert witness' testimony "goes to the weight of her testimony, not its admissibility").  Rather the objective of Daubert's gatekeeper requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999); accord Frazier, 387 F.3d at 1260.

The district court has "substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." United States v. Majors, 196 F.3d 1206, 1215 (11th Cir. 1999).  The Eleventh Circuit has cautioned that "[m]any factors will bear on the inquiry, and [there is no] definitive checklist or test." Maiz, 253 F.3d at 665 (quoting Daubert, 509 U.S. at 593).  While Daubert and its progeny provide flexible guidelines for the admissibility of evidence under Rule 702, "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible" based on the particular circumstances of a specific case.  United States v. Brown, 415 F.3d 1257, 1266-68 (11th Cir. 2005); see also U.S. v. Scott, 403 F. App'x 392, 397

11

(11th Cir. 2010) (finding that the Daubert factors are only general guidelines and the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable").

Experts may be qualified in various ways.  "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." Frazier, 387 F.3d at 1260-61.  Indeed, Federal Rule of Evidence 702 provides that expert status may be based on "knowledge, skill, experience, training, or education."  Fed.R.Evid. 702 advisory committee's note (2000 amends.) ("Nothing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony.")

While an expert's qualifications may bear on the reliability of his proffered testimony, qualifications alone do not guarantee reliability.  Frazier, 387 F.3d at 1260 (citing Quiet Tech. D C-8, Inc. v. Hurel-Dubois UK Ltd, 326 F.3d 1333, 1341–42 (11th Cir. 2003)).  Because "one may be considered an expert but still offer unreliable testimony," it remains a basic foundation for admissibility under Rule 702 and Daubert that proposed expert testimony must be based on "good grounds."  Frazier, 387 F.3d at 1261.  Daubert sets out a list of "general

12

observations" for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702 including: (1) whether the theory in question can be and has been empirically tested; (2) whether the theory in question has been subjected to peer review and publication; (3) the theory's known or potential error rate and whether that rate is acceptable; and (4) whether the theory is generally accepted in the scientific community.  509 U.S. 579, 593-594.

The advisory committee notes for Rule 702 have collected additional factors that courts consider in assessing the reliability of expert testimony:

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.
> (3) Whether the expert has adequately accounted for obvious alternative explanations.
> (4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. advisory committee's note (2000 amends.) (internal quotation marks and citations omitted).

Finally, the court must assess whether the expert testimony is helpful to the

13

trier of fact.  This factor turns on whether the expert testimony "concerns matters that are beyond the understanding of the average lay person."  <u>Frazier</u>, 387 F.3d at 1262.  "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."  <u>Id.</u> at 1262–63.

### B.    Analysis

#### 1.    Michael Quinn [Doc. Nos. 120 and 121]

Defendants move to exclude the testimony of Michael Quinn, contesting the reliability of his method of determining the total number of bedrooms in the homes purchased by Plaintiffs [Defs.' Mot. to Exclude Test. of Michael Quinn ("Defs.' MTET Quinn"), Doc. Nos. 120 and 121 at 2].  Defendants argue that Quinn's testimony regarding what constitutes a bedroom is merely <u>ipse dixit</u>; <u>i.e.</u>, his own subjective opinion [<u>Id.</u>].  In response, Plaintiffs argue that Quinn came to his conclusions by following reliable principles and methodology [Pls.' Resp. in Opp. to Defs.' MTET Quinn, Doc. No. 162 at 2].  Specifically, Plaintiffs reason that Quinn began by identifying the rooms of the homes that satisfied the "habitable room" and "sleeping room" requirements set out by the Council of American Building Officials [Id.].  Of these rooms, Quinn then determined which

AO 72A
(Rev.8/82)

ones he, as an experienced building inspector, would classify as bedrooms [Id.]. In reply, Defendants assert that the CABO building codes do not address what rooms *must* be considered bedrooms and so Quinn's conclusion is purely his own opinion [Defs.' Reply in Supp. Of Defs.' MTET Quinn, Doc. No. 195 at 8–9].

The district court has "substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." Majors, 196 F.3d at 1215.  In assessing whether Quinn's testimony is sufficiently reliable, the Court finds the factors set out in the Rule 702 advisory committee notes particularly helpful.  To reiterate, under the Rule 702 advisory committee notes, the Court may consider:

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.
> (3) Whether the expert has adequately accounted for obvious alternative explanations.
> (4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. advisory committee's note (2000 amends.) (internal quotation marks

AO 72A
(Rev.8/82)

and citations omitted).

In his deposition testimony, Quinn stated that his understanding of what qualifies as a bedroom is based on his independent work as a home inspector [Dep. of Michael Quinn, Doc. No. 150-1 at 112-113:24].  Quinn outlined various factors that he accounts for when determining if a room is a bedroom: whether the room meets the CABO requirements for a "habitable room" and a "sleeping room;" the location of the room in the home; the size of the room relative to other rooms in the home; and the total number of rooms in the home [Id. at 113-114:2-23].  In the course of his determination, Quinn ruled out whether each habitable room was better suited for living, cooking, or dining.  After calculating the total number of bedrooms, Quinn alleged that he consulted with the CABO building code and a Forsyth County official, and revisited some of the homes to verify and adjust his calculations [Id. at 49-54:17].  As a general matter, home inspectors routinely and reliably determine the number of bedrooms in a home in order to ascertain whether these rooms are "up to code."

Based on the foregoing, the Court finds that Quinn's methodology is sufficiently reliable and his conclusions surpass mere ipse dixit.  Thus, the Court **DENIES** Defendants' Motions to Exclude Testimony of Designated Expert

16

Witness Michael Quinn [Doc. Nos. 120 and 121].

### 2.   Norman Koplon [Doc. Nos. 112 and 114]

Defendants move to exclude the testimony of Norman Koplon, alleging that while he may be an expert in building code compliance, he offers testimony that will not assist the trier of fact because it "requires no expertise and is not proper expert testimony" [Defs.' MTET Koplon, Doc. Nos. 112 and 114 at 2]. Defendants reason that Koplon simply compared the number of bedrooms in each purchased home, as calculated by Michael Quinn, with the number of bedrooms permitted for each home [Defs.' Reply in Supp. of Defs.' MTET Koplon, Doc. No. 198 at 2].   Defendants conclude: "There is no scientific, technical, or other specialized knowledge on the part of Mr. Koplon needed to determine whether numbers do or do not match" [Id.].

In response, Plaintiffs assert that Koplon "used his expertise in code enforcement to identify the applicable building and septic codes, to construe the language of those codes, and to evaluate whether the Properties, as measured by Mr. Quinn, complied with those codes" [Pls.' Resp. in Opp'n to Defs.' MTET Koplon, Doc. No. 165 at 10].   The Court finds Plaintiffs' argument persuasive. Whether or not the fact-finder agrees with Koplon's ultimate conclusion regarding

17

"whether numbers do or do not match," Koplon's testimony can assist the fact-finder to identify and interpret the applicable building and septic codes. Accordingly, the Court **DENIES** Defendants' Motions to Exclude Testimony of Designated Expert Witness Norman Koplon [Doc Nos. 112 and 114].

> **3.    Kenneth Cantrell [Doc. Nos. 118 and 119] and Frank Norton [Doc. Nos. 113 and 115]**

Defendants move to exclude various statements made by Kenneth Cantrell and Frank Norton in testimony, alleging that they are irrelevant or inadmissible [Defs.' MTET Cantrell, Doc. Nos. 118 and 119; Defs.' MTET Norton, Doc. Nos. 113 and 115].  Defendants object to Cantrell's statement that certain homes must be demolished to achieve their "highest and best use," alleging that his conclusion is based upon a third party's statements and the faulty findings of Norman Koplon [Defs.' MTET Cantrell at 7, 18].  "[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993). In this case, Cantrell stated that he relied upon Koplon's statement that the residences are not legally permissible [Doc. No. 62, p. 59].  However, in his deposition testimony, Koplon did not state that the use was illegal or improper

18

[Doc. No. 199-2].  For that reason, there is an insufficient factual underpinning for Cantrell's expert testimony to the extent it is based upon his erroneous assumption that Koplon stated that the residences are not legally permissible.  To the extent Cantrell's testimony is based on this assumption, it will not be allowed.  As to Cantrell's testimony that relies upon other sources of information, a fact-finder can determine the ultimate value of this testimony.  As such, Defendants' Motions in Limine [Doc. Nos. 118 and 119] are **GRANTED in PART** and **DENIED in PART**.

Along similar lines, Defendants object to Norton's statements regarding the properties' septic systems, alleging that the subject exceeds his area of expertise [Defs.' MTET Norton at 10].  Upon review, the Court finds that Norton has not assessed the condition of the septic systems himself, but rather relied on the assessments of other experts to determine the impact of septic failure on the properties' marketability.  A marketability determination falls within Norton's area of expertise as an experienced realtor.  Norton has stated the sources on which he relied, and so a fact-finder can determine the ultimate value of his testimony.

Additionally, Defendants object to Cantrell's statement that it is illegal to

use fifteen of the homes, arguing that legal conclusions are inadmissible [Defs.'
MTET Cantrell at 11].   Defendants object to various statements in Norton's
testimony, arguing they too are inadmissible legal conclusions [Defs.' MTET
Norton at 15].   Defendants also object to Norton's opinion that the homes would
be stigmatized for code violations and irreparable problems, alleging that this is
based on "nothing more that [Norton's] own erroneous legal conclusions" [Id. at
13].   Upon review, the Court finds that the testimonies of both experts on these
points are admissible.   The statements at issue fall within Cantrell and Norton's
areas of expertise, being home appraisal and realty respectively.   Moreover, the
statements do not go to the ultimate legal issues before the court, e.g. fraud and
breach of contract.

Finally, Defendants object to Cantrell and Norton's conclusion that there
is no market for one bedrooms homes, alleging that it is irrelevant because by their
own definitions, none of the homes at issue are one bedroom homes [Defs.' MTET
Cantrell at 22; Defs.' MTET Norton at 7].   But if the trier of fact finds Michael
Quinn's definition of "bedroom" persuasive, Cantrell and Norton's testimony
regarding the housing market may assist the fact-finder in determining Plaintiffs'
damages.

20

Based on the foregoing, Defendants' Motions to Exclude Testimony of Designated Expert Witness Kenneth Cantrell [Doc. Nos. 118 and 119] are **GRANTED in PART** and **DENIED in PART** and Defendants' Motions to Exclude Testimony of Designated Expert Witness Frank Norton [Doc. Nos. 113 and 115] are **DENIED**.

### 4.    Michael Fugate [Doc. Nos. 116 and 117]

Defendants move to exclude the testimony of Michael Fugate, alleging that he has offered speculative and irrelevant testimony regarding water usage and septic systems in the homes [Defs.' MTET Fugate, Doc. Nos. 116 and 117 at 6-14]. In response, Plaintiffs assert that Defendants' objections to Fugate's Phase 1 report are irrelevant because Plaintiffs have not filed the report with the Court and it is not part of the instant case [Pls.' Reply to Defs.' MTET Fugate, Doc. No. 163 at 12]. Furthermore, Plaintiffs assert that Defendants have mischaracterized Fugate's testimony regarding his Phase II report because Fugate neither speculated about whether the septic systems require maintenance nor when they may fail [Id. at 13]. Rather, Plaintiffs assert that Fugate exclusively evaluated the options for upgrading and expanding the systems so as to assist the fact finder if he or she determines that it is necessary to modify the septic systems [Id. at 13-14]. A

21

review of the record confirms Plaintiffs' assertions, and therefore, the Court **DENIES** Defendants' Motions to Exclude Testimony of Designated Expert Witness Michael Fugate [Doc. Nos. 116 and 117].

### C.    Conclusion

Based on the foregoing, the Court finds that Michael Quinn's methodology is sufficiently reliable, and Norton Koplon's testimony will assist the trier of fact. Additionally, the Court finds that the issues Defendants raise regarding the conclusions of Frank Norton must be assessed by a fact-finder, and that Defendants' claims against Michael Fugate are unsubstantiated by his testimony. Accordingly, the Court **DENIES** Defendants' Motions to Exclude the Testimony of Expert Witnesses Norman Koplon, Frank Norton, Michael Fugate, and Michael Quinn [Doc. Nos. 112-117, 120-121]. Defendants' Motions in Limine regarding Kenneth Cantrell [Doc. Nos. 118 and 119] are **GRANTED in PART** and **DENIED in PART**.

### III.   Parties' Motions for Summary Judgment

Six Defendants move separately for summary judgment on all of Plaintiffs' claims [Doc. Nos. 122-126, 130], and Plaintiffs move for partial summary judgment on some of their breach of contract claims [Doc. No. 158]. The Court

AO 72A
(Rev.8/82)

sets out the legal standard for summary judgment before addressing the merits of the parties' motions.

### A.    Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).  The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the

governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

B.    **Analysis**

1.    **Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 158]**

24

Plaintiffs move for partial summary judgment on the breach of contract claim as to some of the properties at issue, reasoning that these "Properties contain unpermitted improvements and code/ zoning violations although the Defendants stated clearly in the contracts that this was not the case" by way of the incorporated disclosure statements [Pls.' Repy Br. in Supp. of Mot. for Summ. J., Doc. No. 208 at 5].  Specifically, Plaintiffs assert that "a dozen of the homes contain more bathrooms, finished square feet, and/or stories than allowed by the permits" [Id. at 4].  The parties dispute whether Defendants knew of the alleged permit violations at the time of signing, but Plaintiffs asserts that "Defendants' claimed lack of knowledge does not constitute a contract defense," citing to the Georgia Court of Appeals decisions in Smiley v. S&J Investments, Inc. and Paden v. Murray [Id. at 3, 5].

The Court disagrees.  In Paden, the Georgia Court of Appeals found that Defendants' lack of knowledge barred summary judgment on Plaintiffs' breach of contract claim. The Georgia Court of Appeals definitively stated "a jury must determine whether the [problems] about which [the property buyer] now complains were the same ones of which the [sellers] were aware. . . As such, [Buyer's] breach of contract claim in this regard is not subject to summary

judgment." <u>Paden v. Murray</u>, 240 Ga. App. 487, 490–91 (1999).

Furthermore, <u>Smiley</u> is distinguishable from the case before the Court.  In <u>Smiley</u>, the Georgia Court of Appeals found that where a Seller had "recklessly made representations" regarding the condition of purchased properties, lack of knowledge did not constitute a contract defense.  <u>Smiley v. S & J Investments, Inc.</u>, 260 Ga. App. 493, 501 (2003).  "Recklessness constitutes a deliberate refusal to know where one blinds himself to the truth or falsity of a condition which he recklessly represents to his own advantage."  <u>Abrams & Wofsy v. Renaissance Inv. Corp.</u>, 820 F. Supp. 1519, 1530 (N.D. Ga. 1993) (internal quotation omitted).  A determination of recklessness in the present case is fact-specific and depends upon realty business practice norms, both of which the parties vigorously dispute.  Viewing the evidence and drawing all reasonable inferences in the light most favorable to Defendants, the Court cannot conclude that Defendants recklessly made representations in the disclosure statements.

Plaintiffs have failed to establish as a matter of law either that Defendants were aware of the alleged permit violations at the time of signing, or that Defendants recklessly made representations regarding said violations.  Accordingly, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment

[Doc. No. 158].

### 2.    Defendants' Motions for Summary Judgment [Doc. Nos. 122-126, 130]

Six Defendants separately move to dismiss all thirty-two claims stated in Plaintiffs' Complaint [Doc. Nos. 122-126, 130].  As stated, the parties dispute whether Defendants were aware of any permit violations when the disclosure statements were signed, yet Defendants' state of mind at the time of signing is material to Plaintiffs' fraud, civil conspiracy, and breach of contract claims.

As to Plaintiffs' claims against broker Jeffrey Moore, Plaintiffs have not offered any evidence of misrepresentations by Mr. Moore that they may have relied upon.  Additionally, under Georgia law, Mr. Moore owed no fiduciary duty to Plaintiffs with regard to the transactions at issue here.  See O.C.G.A. §§ 10-6A-3, 10-6A-4, and 10-6A-14.  As such, the Court **GRANTS** Defendant Jeffrey Moore's Motion for Summary Judgment [Doc. No. 11].

As to the other Defendants [Doc. Nos. 123-126, 130], with the material facts largely disputed, the Court cannot determine whether a reasonable person in their position would have believed no permit violations existed at the time of signing, yet such a determination is material to Plaintiffs' negligent misrepresentation

claim.  Plaintiffs' remaining claims for unjust enrichment, attorney's fees, and punitive damages depend upon a determination of the aforementioned claims. Reviewing the evidence and drawing all reasonable inferences in the light most favorable to Plaintiffs, the Court cannot conclude at this time that these Defendants did not know of the alleged permit violations, or that it was reasonable for these Defendants to believe there were no permit violations.  Thus, the Court **DENIES** Defendants' Motions for Summary Judgment [123–126, 130].

## CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Plaintiffs' Motion to Strike Affidavits of Defendants Jeffrey Moore and John J. Mitchell [Doc. No. 171], **DENIES** Defendants' Motions to Exclude the Testimony of Expert Witnesses Norman Koplon, Frank Norton, Michael Fugate, and Michael Quinn [Doc. Nos. 112-117, 120-121], **GRANTS in PART** and **DENIES in PART** Defendants' Motions in Limine regarding Kenneth Cantrell [Doc. Nos. 118 and 119], **DENIES** Plaintiffs' Partial Motion for Summary Judgment [Doc. No. 158], **GRANTS** Defendant Jeffrey Moore's Motion for Summary Judgmetn [Doc. No. 122, and **DENIES** the remaining Defendants' Motions for Summary Judgment [Doc. Nos. 123-126, 130].   The parties are **ORDERED** to file a

28

consolidated proposed pretrial order within thirty days.

**SO ORDERED**, this 2nd day of September, 2015.

_____
**RICHARD W. STORY**
United States District Judge

29